|                             |   |                        |
|-----------------------------|---|------------------------|
| UNITED STATES DISTRICT COURT |   | EASTERN DISTRICT OF TEXAS |

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| *versus* | § | CASE NO. 1:17-CR-31(8) |
| | § | |
| NAKENDRA DOMINIQUE MCKNIGHT | § | |

## MEMORANDUM AND ORDER

Pending before the court is Defendant Nakendra Dominique McKnight's ("McKnight") *pro se* Motion for Early Termination of Supervised Release (#347), wherein she seeks early termination of her three-year term of supervised release. McKnight's supervising United States Probation and Pretrial Services ("Probation") officer in the Southern District of Texas, Houston Division, is unopposed to the motion. Her Probation officer in the Eastern District of Texas, Beaumont Division, however, is opposed to the motion, noting that the Probation Office in the Eastern District of Texas does not typically recommend early termination for individuals with this type of criminal background and that McKnight has not presented any extraordinary accomplishments during the supervision period. The Government is also opposed to McKnight's request for early termination. Having considered the motion, Probation's report, the Government's position, the record, and the applicable law, the court is of the opinion that McKnight's motion should be denied.

I.   Background

On March 22, 2017, a federal grand jury in the Eastern District of Texas, Beaumont Division, returned a five-count Indictment against McKnight and seven codefendants, charging her in Count One with Conspiracy to Interfere with Commerce by Robbery, in violation of 18 U.S.C. § 1951, in Count Two with Bank Robbery, in violation of 18 U.S.C. § 2113(a), and in Count Five

with Using and Carrying a Firearm, During and in Relation to a Crime of Violence, in violation of 18 U.S.C. § 924(c). Pursuant to a written plea agreement, McKnight pleaded guilty to the offense charged in Count One of the Indictment on August 22, 2017. On April 19, 2018, the court sentenced McKnight to a term of 90 months' imprisonment, followed by a three-year term of supervised release. McKnight began her term of supervised release on December 1, 2022, in the Southern District of Texas, which is projected to expire on November 30, 2025.

In her motion, McKnight, age 38, asks the court to terminate her supervision at this time, having served about half of her three-year term of supervised release. McKnight states that she has successfully complied with the conditions of her release, has completed drug and mental heath treatment, has secured employment, has avoided any arrests or criminal charges, and has obtained her own residence where she resides with her two oldest daughters.

II. Analysis

Title 18, United States Code, Section 3583(e) authorizes a district court to terminate supervised release at any time after the expiration of one year if, after considering the factors set forth in Section 3553(a),[1] "it is satisfied that such action is warranted by the conduct of the defendant released and the interest of justice." 18 U.S.C. § 3583(e)(1); *accord United States v. Johnson*, 529 U.S. 53, 59-60 (2000); *United States v. Peters*, 856 F. App'x 230, 233 (11th Cir.

---

[1] Section 3553(a) directs courts to consider: the nature and circumstances of the offense and the defendant's history and characteristics; the need to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; the need to deter criminal conduct; the need to protect the public; the need to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; the kinds of sentences and sentencing ranges established for defendants with similar characteristics under applicable Sentencing Commission guidelines and policy statements; any pertinent policy statement of the Sentencing Commission in effect on the date of sentencing; the need to avoid unwarranted disparities among similar defendants; and the need to provide restitution to the victim. 18 U.S.C. § 3553(a).

2021); *Herndon v. Upton*, 985 F.3d 443, 446 n.5 (5th Cir.), *cert. denied*, 142 S. Ct. 82 (2021); *United States v. Melvin*, 978 F.3d 49, 52 (3d Cir. 2020); *United States v. Cochran*, 815 F. App'x 361, 363 (11th Cir. 2020); *United States v. Davies*, 746 F. App'x 86, 88-89 (3d Cir. 2018), *cert. denied*, 139 S. Ct. 1275 (2019).  "Early termination of supervised release is not an entitlement." *United States v. George*, 534 F. Supp. 3d 926, 927 (N.D. Ill. 2021).  Instead, the defendant bears the burden of demonstrating that early termination is warranted.  *Id.*; *United States v. Luna*, No. 1:95-cr-05036-AWI, 2018 WL 10156108, at *1 (E.D. Cal. Mar. 12, 2018), *aff'd*, 747 F. App'x 561 (9th Cir. 2018).  Early termination "is not warranted as a matter of course." *United States v. Morris*, No. 3:99-cr-264-17 (VAB), 2022 WL 3703201, at *3 (D. Conn. Aug. 26, 2022).  "To the contrary, it is only 'occasionally' justified." *United States v. Shellef*, No. 03-CR-0723 (JFB), 2018 WL 3199249, at *1 (E.D.N.Y. Jan. 9, 2018) (quoting *United States v. Lussier*, 104 F.3d 32, 36 (2d Cir. 1997)).

Although McKnight's supervising Probation officer in the Southern District of Texas does not oppose early termination, the Probation Office in the Eastern District of Texas and the Government are opposed to terminating her supervised release at this time.  In any event, this fact, standing alone, is insufficient to justify granting McKnight's request for early termination of supervised release.  *See*, *e.g.*, *United States v. Boyd*, 606 F. App'x 953, 960 (11th Cir. 2015) ("Just as a federal prosecutor or probation officer cannot dictate a district court's sentence, they likewise do not call the shots concerning a court's decision whether to terminate early a term of supervised release.  A criminal sentence is the court's sentence, not the prosecutor's and not the probation officer's."); *United States v. Lynn*, No. S90-00053(P), 2022 WL 2446328, at *3 (S.D. Miss. May 31, 2022) (finding that although the Government and probation did not oppose early

termination, that fact, standing alone, was insufficient to justify granting the defendant's request for early termination of supervised release); *United States v. Hartman*, No. 3:00-cr-228, 2013 WL 524257, at *1 (N.D. Tex. Jan. 18, 2013) (denying defendant's request for early termination of supervised release despite the Government's recommendation that it be granted), *adopted by* 2013 WL 540490 (N.D. Tex. Feb. 13, 2013); *United States v. Grimaldi*, 482 F. Supp. 2d 248, 249 (D. Conn. 2007) (denying early termination even though the defendant's probation officer supported it).

District courts enjoy considerable discretion in determining when the interest of justice warrants early termination. *United States v. Tacker*, 672 F. App'x 470, 471 (5th Cir. 2017); *United States v. Jeanes*, 150 F.3d 483, 484-85 (5th Cir. 1998); *Lynn*, 2022 WL 2446328, at *3; *see Melvin*, 978 F.3d at 52. Compliance with the terms of supervised release and with the law alone is not enough to merit early termination; such conduct is expected and required. *United States v. Taylor*, 729 F. App'x 474, 475 (7th Cir. 2018) ("[M]ere compliance with the terms of supervised release is expected, and without more, insufficient to justify early termination."); *United States v. Seymore*, No. CR 07-358, 2023 WL 3976200, at *1 (E.D. La. June 13, 2023) ("[C]ourts have generally held that something more than compliance with the terms of [supervised release] is required to justify an early termination . . . ." (quoting *United States v. Smith*, No. 10-cr-53-DPJ-FKB, 2014 WL 68796, at *1 (S.D. Miss. Jan. 8, 2014))); *Lynn*, 2022 WL 2446328, at *4 (although the defendant adhered to the conditions of his release, a balancing of the 18 U.S.C. § 3553(a) factors did not support early termination, noting that the defendant "engaged in constant serious criminal behavior when he was given chances before"); *United States v. Sandles*, No. 11-CR-204-PP, 2021 WL 3080995, at *3 (E.D. Wis. July 21, 2021) ("[C]ourts have held 'that

the conduct of the defendant necessary to justify early termination should include more than simply following the rules of supervision; otherwise, every defendant who avoided revocation would be eligible for early termination.'" (quoting *United States v. O'Hara*, No. 00-cr-170, 2011 WL 4356322, *3 (E.D. Wis. Sept. 16, 2011))); *United States v. Boudreaux*, No. 2:19-CR-00377-01, 2020 WL 7635708, at *1 (W.D. La. Dec. 22, 2020); *United States v. Pittman*, No. 3:15-CR-221-O(1), 2020 WL 6564724, at *2 (N.D. Tex. Nov. 9, 2020) (finding that the conduct of the defendant did not warrant early termination of supervised release, as the defendant sought relief based on his circumstances and the alleged conduct of others) (citing 18 U.S.C. § 3583(e)(1)); *see United States v. Berger*, No. CR 09-308, 2021 WL 2354517, at *5 (W.D. Pa. June 9, 2021) ("Compliance with the conditions of supervision, including refraining from engaging in criminal conduct and paying restitution, however, is required behavior while serving a term of supervised release."). As courts have observed, "if every defendant who complied with the terms of supervised release were entitled to early termination, 'the exception would swallow the rule.'" *United States v. Kassim*, No. 15 Cr. 554-3 (KPF), 2020 WL 2614760, at *2 (S.D.N.Y. May 22, 2020) (citing *United States v. Medina*, 17 F. Supp. 2d 245, 247 (S.D.N.Y. 1998)).

While the court need not find extraordinary, compelling, or changed circumstances to justify an early termination of supervised release, this does not mean that such circumstances are irrelevant to ruling on a motion under § 3583(e)(1). *United States v. Ferriero*, No. 13-0592 (ES), 2020 WL 6701469, at *2 (D.N.J. Nov. 13, 2020) (citing *Melvin*, 978 F.3d at 53); *accord United States v. Parisi*, 821 F.3d 343, 347 (2d Cir. 2016). This is because, if a sentence was "sufficient, but not greater than necessary" when first pronounced, pursuant to 18 U.S.C. § 3553(a), it would be expected that something has changed that would justify an early end to a term of supervised

release. *Melvin*, 978 F.3d at 53; *United States v. Jackson*, No. 11-55, 2022 WL 2789870, at *2 (W.D. Pa. July 15, 2022); *United States v. Santoro*, No. 21-76 (MAS), 2022 WL 37471, at *2 (D.N.J. Jan. 4, 2022); *Ferriero*, 2020 WL 6701469, at *2. In other words, extraordinary circumstances may be sufficient to justify early termination of a term of supervised release, but they are not necessary for such a termination. *Melvin*, 978 F.3d at 53; *United States v. McClamma*, 676 F. App'x 944, 947 (11th Cir. 2017) ("New or unforeseen circumstances can justify a modification, but such circumstances are not necessary."); *Parisi*, 821 F.3d at 347 (recognizing that "changed circumstances may in some instances justify a modification" of a term of supervision). Nonetheless, "'generally, early termination of supervised release under § 3583(e)(1)' will be proper 'only when the sentencing judge is satisfied that new or unforeseen circumstances' warrant it." *Melvin*, 978 F.3d at 53 (quoting *Davies*, 746 F. App'x at 89); *Seymore*, 2023 WL 3976200, at *1 ("[E]arly termination is usually granted only in cases involving changed circumstances, such as exceptionally good behavior." (quoting *Smith*, 2014 WL 68796, at *1)).

McKnight's offense of conviction entails her participation in a conspiracy to interfere with commerce by robbery that spanned from 2014 to 2017. She, along with seven codefendants, was charged with conspiring to commit a series of nine armed bank robberies in various Texas cities. On April 14, 2016, Codefendant Micah Johnson ("M. Johnson") and an unindicted coconspirator entered a J.P. Morgan Chase Bank in Houston and forcibly stole $213,877.00. Upon entering the bank, one of the robbers ran directly to and jumped over the back teller counter to get to the vault. The other robber stayed in and controlled the lobby area at which time he observed two individuals, one of whom was an armed, off-duty police officer, in a cubicle area and directed

them to move to the lobby. After taking the money, both men ran from the bank to a vehicle. The off-duty police officer followed the robbers from the bank, and, while they were struggling to start the vehicle, he identified himself as a police officer and ordered them to comply with his instructions. The robbers exited the vehicle and ran away, leaving the money behind in the vehicle and dropping a cell phone on the pavement. M. Johnson fired his weapon, and the officer returned fire. The coconspirator was arrested about a mile from the bank, but M. Johnson was not arrested at that time. He fled the area in a vehicle waiting nearby, driven by Codefendant Johntre Johnson ("J. Johnson"). Investigators recovered the dropped cell phone and discovered it contained photographs of M. Johnson and McKnight in possession of a firearm that was retrieved from M. Johnson and Codefendant Wade's vehicle on February 22, 2017. McKnight, along with Wade, Codefendant Rhine, and Codefendant Eric Johnson ("E. Johnson"), participated in the planning and execution of the robbery.

On February 22, 2017, investigators observed Codefendant Davy's vehicle at a gathering of several people in a Wal-Mart parking lot in Houston. Four vehicles, including Davy's, left the parking lot in tandem and traveled east toward Beaumont, Texas. The vehicles arrived at an apartment complex in Beaumont and congregated near a Cadillac Escalade which had been stolen during a carjacking on February 17. Officers observed several people at the complex who appeared to be meeting and planning a robbery, as evidenced by their black clothing, gloves, and possession of handguns. All five vehicles left the apartment complex about 90 minutes later and traveled northward in tandem. The Escalade and a Chevrolet Suburban eventually turned west toward a commercial area of west Beaumont. Officers attempted to conduct a traffic stop on the Escalade, but it accelerated and fled from officers who pursued the vehicle with sirens and lights

through a residential area where it failed to stop at red lights, drove into oncoming traffic, and disregarded the safety of other motorists while items, including firearms, were thrown from the vehicle. When the driver attempted to enter an apartment complex at a high rate of speed, the vehicle drove over a curb and stopped. All three occupants exited the vehicle and fled on foot after which they were apprehended. Three firearms were recovered along the path of pursuit. The Chevrolet Suburban, driven by McKnight, followed the Escalade from the apartment complex until the Escalade began fleeing from law enforcement. She changed direction and drove to a nearby Popeye's restaurant where she was arrested without incident. Subsequent investigation revealed that an unindicted coconspirator and an unknown individual had previously surveilled several banks in the Beaumont area at the request of M. Johnson to determine which bank to rob and had selected MidSouth Bank as the target. Rhine provided the stolen Escalade to M. Johnson for use in the robbery. M. Johnson and Wade planned to enter and rob the bank. Codefendant Williams was to remain in the Escalade as the driver, while McKnight, J. Johnson, Davy, E. Johnson, and an unindicted coconspirator were to serve as lookouts. Cell phone records show a number of calls between M. Johnson and McKnight on the day of the planned robbery.

McKnight admitted to driving to Beaumont with M. Johnson on February 22, 2017, to providing him a firearm that was being kept in the glove compartment of a rental vehicle in her name, and to dropping off M. Johnson, Codefendant Williams, and Wade at a Cadillac Escalade parked at an apartment complex in Beaumont. She indicated that the group intended to rob the MidSouth Bank on Dowlen Road in Beaumont. She further stated that the group discussed the planned bank robbery while sitting together in a Chevrolet Suburban in the complex parking lot. McKnight was found responsible for participating in the two robberies and for a total actual loss

of $213,877.00.  She was also found responsible for taking the property of a financial institution and for M. Johnson's discharge of a firearm during the Chase Bank robbery.

While on pretrial release, McKnight submitted a urine specimen that tested positive for marijuana.  She denied the use of marijuana, but a lab test confirmed the initial test results.  A petition for action on conditions of pretrial release was filed on October 12, 2017, and a warrant was issued for her arrest.  McKnight was arrested in the Southern District of Texas and was transferred to Beaumont.  On November 7, 2017, she appeared before a magistrate judge and consented to detention.  Despite her apparent violation of the conditions of her pretrial release, she still obtained a reduction in her sentence for acceptance of responsibility.  McKnight's criminal history includes prior convictions for possession with intent to deliver cocaine and possession of marijuana.  McKnight's presentence investigation report indicates that she has a history of substance abuse since age 16 which involved the daily use of marijuana up to the time of her arrest.  She also has a history of mental health problems, including a reported diagnosis of bipolar disorder and a self-assessment of depression as well as a statement to Probation that she sees and hears spirits.

In this situation, the court finds that McKnight's post-release conduct does not warrant early termination of her supervised release.  Although McKnight lists the conditions of release she has fulfilled and provides the court with certificates of completion of various courses she took while incarcerated, she identifies no new or exceptional circumstances or needs.  McKnight complains, however, that the inability to travel with her daughters or to take any family vacation trips with other family members is "tough."  She also contends that being on supervised release is keeping her from furthering her career and achieving more goals.

Courts have often denied requests for early termination of supervised release based on a defendant's desire to travel for business purposes or to visit family. *See United States v. Alber*, No. 14-491(SRC), 2022 WL 1683710, at *3-4 (D.N.J. May 25, 2022) (travel for job training and family needs); *Santoro*, 2022 WL 37471, at *3 (travel out-of-state to spend time with family); *United States v. Tinsley*, No. 12-263, 2020 WL 1472428, at *3 (W.D. Pa. Mar. 26, 2020) (travel for "business opportunities"); *United States v. Gonzalez*, No. 94-cr-0134 (JSR), 2015 WL 4940607, at *1 (S.D.N.Y. Aug. 3, 2015) (travel for out-of-state employment training programs); *United States v. Gardner*, No. 03-CR-194, 2012 WL 4864997, at *1 (E.D. Wis. Oct. 12, 2012) (travel out-of-state to work as a promoter and become a professional boxer). A defendant's failure to provide concrete information "demonstrating lost potential business opportunities due to his travel restrictions" typically results in denial of his request for early termination of supervised release, particularly where Probation already permits domestic travel with prior approval. *See United States v. Olivieri*, 72 F. Supp. 3d 401, 403-04 (S.D.N.Y. 2014) (travel outside the district for employment purposes, where Probation had previously granted every domestic travel request the defendant submitted); *see also United States v. Coleman*, No. 15-543, 2021 WL 4940979, at *3 (E.D. Pa. Oct. 22, 2021) (travel for both business and charitable work, where the defendant failed to provide "specific examples" of instances where he was "denied permission to travel . . . for purposes that are legitimately related to his professional or charitable endeavors"); *United States v. Black*, No. 10-CR-303-A, 2013 WL 2527371, at *3 (W.D.N.Y. June 10, 2013) (travel for business reasons, where the defendant "report[ed] no specific instance when the travel-approval process has had a concrete negative effect on his business"). In this instance, the court finds that McKnight's desire to travel with her family is not new or unforeseen, and there is no indication

that she has sought permission to engage in travel beyond the geographical area permitted by her conditions of supervised release, which is commonly authorized by Probation with proper notice. *See Lynn*, 2022 WL 2446328, at *2.

Similarly, courts have often denied requests for early termination of supervised release where a defendant claims that early termination will improve his or her employment prospects without providing concrete support for this contention. *See United States v. Lagone*, No. 10-CR-818 (JFB), 2017 WL 606016, at *4 (E.D.N.Y. Feb. 15, 2017) (denying early termination in part because the defendant "merely generally contended that early termination would bolster his job prospects" and did not provide more detailed information); *United States v. Gonzalez*, No. 94-cr-0134 (JSR), 2015 WL 4940607, at *1-2 (S.D.N.Y. Aug. 3, 2015) (refusing to grant early termination where the defendant failed to "establish[ ] that the terms of his supervised release pose[d] any hazard to his employment" and did not "explain[ ] how the terms of his supervised release [had] 'even an intangible impact' on his employment" (quoting *United States v. Black*, No. 10 Cr. 303-A, 2013 WL 2527371, at *3 (W.D.N.Y. June 10, 2013))); *United States v. Olivieri*, 72 F. Supp. 3d 401, 403-04 (S.D.N.Y. 2014) (determining that the defendant's circumstances did not warrant early termination in part because he "advanced no basis for his contention that 'the restrictions and general weight of supervised release' impede[d] his employment"); *United States v. Ogele*, No. CR 06-546 PJH, 2012 WL 6035537, at *2 (N.D. Cal. Dec. 4, 2012) (refusing to grant early termination in part because the defendant "offer[ed] no details of prospective business opportunities" and failed to "explain why fulfilling his term of supervised release would inhibit his ability to make a reasonable living").

Here, McKnight fails to explain how the conditions of her supervised release limit her employment opportunities. She does not clarify how being on supervised release keeps her from furthering her career or achieving additional goals. Indeed, she identifies no current conditions of supervision that place any limitations on McKnight's enhancing her employment or impede her employment prospects. Accordingly, the court finds that McKnight's nebulous claim that early termination will enable her to advance in her career provides no basis for ending her term of supervised release early.

At this time, McKnight has served about half of her three-year term of supervised release. While McKnight's achievements to date should be commended, continuing her on supervision will provide her the best opportunity for success in reentry in view of her prior involvement in crimes of violence in which firearms are used and her history of substance abuse. Requiring McKnight to complete her entire term of supervised release safeguards against the reoccurrence of criminal activity and drug use. Generally, early termination of supervised release is not granted unless there are significant medical concerns, substantial limitations on employment, or extraordinary post-release accomplishments that would warrant such a release. McKnight does not identify any such circumstances in her motion and is instead seeking early termination of her supervision simply for complying with the conditions imposed by the court. Thus, although McKnight appears to be on the right path, the court believes that completion of her full term of supervised release appropriately reflects the seriousness of her offense, deters future criminal conduct, and provides needed structure for her continued rehabilitation. *See Lynn*, 2022 WL 2446328, at *4 (holding that the serious nature of the defendant's crimes and his history and characteristics significantly outweighed his actions after his release from prison). The court, likewise, is of the opinion that

McKnight's current sentence, including the three-year term of supervised release, was appropriate at the time of sentencing and remains so.  *See United States v. Lewis*, No. 17-CR-28-FPG, 2021 WL 4519795, at *3 (W.D.N.Y. Oct. 4, 2021).  As Probation points out, "[a]lthough Ms. McKnight should be commended for her progress so far, there is no reference to any extraordinary accomplishments or compelling reasons for granting the motion, outside of general compliance that is expected of all persons under supervision."  Probation further notes that "the presentence report in this case shows the nature of the instant offense being violent" and "also indicates she participated in the planning and execution of the robbery."  Given the nature of the offense in which she participated in two armed bank robberies, her admission that she supplied a firearm for use in the robberies, her criminal history which includes drug offenses, and her failure to comply with the conditions of her pretrial release, the court concludes that early termination of McKnight's term of supervised release would not be in the interest of justice.

III.   Conclusion

In accordance with the foregoing, McKnight's *pro se* Motion for Early Termination of Supervised Release (#347) is DENIED.

SIGNED at Beaumont, Texas, this 14th day of May, 2024.

                                                                                  MARCIA A. CRONE
                                                            UNITED STATES DISTRICT JUDGE